```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION
```

| | |
|---|---|
| NORMAN GRAHAM, * | |
| Plaintiff, * | |
| vs. * | CASE NO. 4:24-cv-119 (CDL) |
| COLUMBUS CONSOLIDATED * GOVERNMENT, | |
| * | |
| Defendant. | |

O R D E R

Norman Graham worked as a Correctional Detail Officer for the Columbus Consolidated Government ("CCG") until he was terminated in 2023. Graham contends that CCG discriminated against him because of his disability and terminated him in retaliation for taking extended medical leave in 2022 and 2023. Graham asserts disability discrimination and retaliation claims against CCG under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112, 12217 & 12203. CCG filed a motion for summary judgment as to all of Graham's claims. For the following reasons, that motion (ECF No. 11) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material*

fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Graham, the record reveals the following facts.

Norman Graham began working as a correctional detail officer for CCG in 2003. In August of 2019, Graham was granted a transfer to work as a correctional detail officer in the Facilities Maintenance Division of CCG, where he oversaw the only inmate painting crew in the division. Graham worked in this position until his separation in June 2023.

As a correctional detail officer, Graham was required to be certified by the Georgia Peace Officer Standards and Training ("POST") Council and complete annual training programs each year. Graham last attended the POST training in 2022. Graham's essential duties consisted of supervising three to eight inmates at a time as they performed general labor tasks. He transported the inmates in a CCG-issued car or van from the Muscogee County Prison to

2

various job sites and back, and he purchased painting supplies for the crew.  He was required to carry a gun and handcuffs, and he had to possess knowledge of general takedown techniques to ensure the safety of himself, the inmates, and other citizens in the community.

In December of 2018, Dr. George Miller submitted a medical certification form to CCG stating that Graham had been diagnosed with chronic systolic congestive heart failure in August of 2017.  This form stated that Graham would periodically be unable to perform job functions when symptomatic and could not lift more than twenty pounds.  By December 2018, Graham had been hospitalized at least five times for issues related to his heart disease.  In June 2019, Graham was admitted to the hospital overnight.

In December of 2020, Graham experienced sudden shortness of breath while transporting prisoners and had to be taken to the emergency room, where he became unresponsive and had to be intubated.  In January of 2021, Graham again experienced sudden shortness of breath while at work and went to the emergency room.  In May of 2021, Graham went back to the emergency room after experiencing chest pain.  In January of 2022, Graham experienced physical distress while at work and had to be taken to the hospital in an ambulance.  He was admitted to the hospital for a few days.  Graham also went to the emergency room at least twice in February of 2022 and once in March of 2022.  Around this time, Graham failed

a cardiac stress test but did not report it to CCG.  Graham had exhausted all his paid leave by April of 2022.  In April of 2022, Dr. Miller submitted a second medical certification form to CCG stating that Graham needed to work a reduced schedule indefinitely and may be able to complete three to four hours of desk work a day but could not transport inmates to and from work assignments. Graham was hospitalized again in May of 2022.  From January of 2022 to August of 2022, Graham worked five total days.

In August of 2022, Dr. Miller cleared Graham to return to work for sixteen to twenty-four hours a week.  Because Graham was feeling better, he ignored Dr. Miller's work limitations and returned to work on a full-time schedule at the end of August 2022. In December of 2022, Graham felt bad while driving, so he pulled over and called EMS.  Graham was admitted to the hospital and went into cardiac arrest.  He remained unconscious for days and was not discharged until mid-January 2023.  Less than one week after he was discharged from the hospital, Graham was readmitted to the hospital for another week and was discharged into the care of a home health service.  The last day Graham worked as a detail officer for CCG was December 22, 2022.

Dr. Miller referred Graham to Dr. Youssef Nasr, an advanced heart failure & transplant cardiologist, in February of 2023.  At this time, Graham struggled to do daily life activities without losing his breath, could only walk 150 feet without getting tired

4

and having to stop, and could not walk up a flight of stairs without stopping.  Dr. Nasr determined that Graham might be in end stage heart failure based on many high-risk factors, including Graham's history of living with heart failure for many years without improvement, his enlarged heart, his unimproved condition despite taking medication, his frequent hospitalizations, and his frequent shortness of breath and inability to perform daily activities.  In March of 2023, Graham underwent a catheterization procedure and had to be admitted to the hospital.  Based on the results of the procedure, Dr. Nasr concluded that Graham was not at end stage heart failure but was very close.  Later that month, Graham was admitted to the hospital with more cardiac symptoms.

On March 31, 2023, Dr. Nasr wrote a letter to CCG recommending that Graham remain out of work until at least April 28, 2023, while Graham underwent further testing to determine when he could return to work.  Graham took a cardio stress test on April 21, 2023, and he failed it even though he had been doing better and engaged in physical therapy for a month.  Dr. Nasr informed Graham of the poor test results, and Graham requested a letter to go back to work.  Though he was concerned about the poor stress test results, Dr. Nasr issued a note to CCG stating that Graham could return to light duty work for a maximum of thirty-two hours a week with no heavy lifting.  Graham submitted the note to Johnny Harp, the Facilities Maintenance Division Manager for CCG Public Works.

Drale Short, the Director of Public Works for CCG, rejected Graham's light duty request on the grounds that Graham's sustained absences had created a backlog of work. Short Dep. 100:9-21, ECF No. 14. Graham remained out on leave.

In May of 2023, Short recommended terminating Graham's employment and allowing him to apply for part-time work. *Id.* at 99:25-100:21. Reather Hollowell, the Human Resources Director for CCG, suggested that it could be a layoff. *Id.* at 109:12-17. Short does not remember if Harp ever recommended terminating Graham. *Id.* at 112:19-21. On June 23, 2023, Short mailed Graham a letter stating that he was being laid off because it was apparent that he could not return to his regular duty as a correctional detail officer. Graham Dep. Ex. 29, Letter from D. Short to N. Graham (June 23, 2023), ECF No. 13-29. The letter made clear that light duty was not a permanent solution, but invited Graham to let CCG know if there was another way to accommodate him. *Id.* Graham received the letter on June 26, 2023.

On June 28, 2023-two days before Graham's effective date of separation-Graham attended an appointment with Dr. Nasr. At this appointment, Graham stated that he felt much better and wanted to return to work so that he could retire by the end of the year and have insurance. At the appointment, Dr. Nasr determined that Graham had a higher risk of re-hospitalization, going from a "three" to a "six" on the scale Dr. Nasr uses to measure a patient's

risk. Although Graham stated that he felt better, he also stated he was still short of breath when performing daily activities such as bathing and getting dressed. Dr. Nasr acknowledged that it was "risky, but possibly doable" for Graham to return to work because there was still a risk of re-hospitalization and death. Nasr Dep. 64:9-65:7, ECF No. 15. Dr. Nasr stated that Graham was still "living at the borderline situation", where Graham could get better or he could suddenly get worse. *Id.* at 67:6-12. Dr. Nasr did not conduct any clinical tests at this appointment. *Id.* at 62:12-63:4. Based on Graham's representations to Dr. Nasr, Dr. Nasr issued a form return-to-work note stating that in his opinion, "Graham may return to full duty immediately with no restrictions." Graham Dep. Ex. 28, Note from Dr. Y. Nasr (June 28, 2023), ECF No. 13-28 ("Return-to-Work Note"). Dr. Nasr did not know what Graham's job duties were when he issued this note. Nasr Dep. 50:4-51:14; 72:14-24.

Graham delivered the note to Short's assistant on June 29, 2023. Short emailed this note to Hollowell stating that "we don't want [Graham] back. He was not a productive employee." Short Dep. 150:17-151:6. Short based this opinion on a backlog of work orders caused by Graham's absences. *Id.* at 162:8-163:7. Harp also shared the opinion that Graham was "not an efficient or productive employee." Harp Aff. ¶ 10, ECF No. 11-2.

7

On June 30, 2023, Short spoke to Graham on the phone and declined to rescind the layoff. Graham testified that Short stated "I'm not taking you back, not taking anybody back that want to run up and go see a doctor to save their job." Graham Dep. 300:3-8, ECF No. 13. Short testified that if she had received Dr. Nasr's note prior to mailing the separation notice, she would have discussed the possibility of Graham returning to work with HR Director Hollowell. Short Dep. 160:21-161:5. Short possessed the authority to rescind Graham's termination notice before it became effective. Hollowell Dep. 66:2-18, ECF No. 18. No one from CCG contacted Graham's doctors to ask questions about Graham's fitness to serve before Graham was terminated. *Id*. at 69:1-20.

## DISCUSSION

Graham asserts that his termination was discriminatory and retaliatory, in violation of the ADA. CCG moves for summary judgment on both claims, which the Court addresses in turn below.

**I.   Graham's ADA Discrimination Claim**

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish discrimination under the ADA, a plaintiff must show that (1) he has a disability; (2) he is a qualified individual; and (3) the employer discriminated against him because of his disability. *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1191 (11th Cir. 2024). It is undisputed that Graham had a disability

8

(his heart condition), but CCG argues that Graham was not a qualified individual. CCG further asserts that even if Graham was a qualified individual, Graham did not produce sufficient evidence for a reasonable jury to find that CCG unlawfully discriminated against him because of his disability.

The ADA only protects a "qualified individual" from employment discrimination. 42 U.S.C. § 12112(a). Under the ADA, a "qualified individual" is an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of" his job. 42 U.S.C. § 12111(8). "If the individual is unable to perform an essential function of [his] job, even with an accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007) (quoting *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005)). Further, "[a]n employer may fire a disabled employee if the disability renders the employee a 'direct threat' to his own health and safety." *Moses v. Am. Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996) (per curiam). "Direct threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r). Whether an individual poses a direct threat "shall be based on an individualized assessment of the individual's present ability to

9

safely perform the essential functions of the job." *Id.* "The employee retains at all times the burden of persuading the jury either that he was not a direct threat or that reasonable accommodations were available." *Moses*, 97 F.3d at 447.

CCG asserts that Graham was unqualified to perform the essential functions of his job and that Graham's disability rendered him a direct threat to himself and others. The essential functions of Graham's job included being present at work, independently providing armed supervision for prison inmates on work details, and driving the inmates to and from work details. Graham does not argue that any reasonable accommodations would have allowed him to safely perform these essential functions. Rather, Graham asserts that Dr. Nasr's note clearing him to return to work conclusively established that he was immediately able to work full-time without restrictions and perform the essential functions of his job without endangering himself or others. It did not.

When CCG mailed the notice of separation on June 23, 2023, the most recent doctor's note Graham had submitted to CCG stated that Graham could only work in light duty capacity for limited hours, which would not enable him to perform the essential functions of his job. Based on information Graham and his doctors provided, CCG knew that Graham suffered from a chronic heart disease that led to several hospitalizations-including one

10

hospitalization after Graham became incapacitated on the job and at least three times when he went to the hospital directly after work. CCG also knew that Graham had missed months of work and had not been cleared to return to full duty. Based on this information, CCG issued a notice of separation letter informing Graham that he was being laid off because it was apparent he could not return to regular duty as a correctional detail officer. Less than a week after receiving this letter, Graham submitted a generic form return-to-work note from Dr. Nasr stating that Graham was presently able to return to full duty. The letter contained no details. Dr. Nasr testified that he issued this note based on Graham's representations to him that he felt better. Dr. Nasr did not know what Graham's specific job duties were and emphasized that it was still risky for Graham to return to work because Graham's heart condition was severe and Graham was still in a borderline state where he could get better or worse.

When considering the nature of Graham's job, the severity of his heart disease, and Dr. Nasr's deposition testimony concerning Graham's condition on June 28, 2023, the generic return-to-work note is not sufficient evidence to create a genuine fact dispute on the issue of whether Graham could perform the essential functions of his job without endangering himself or others. Graham contends that CCG should have at least obtained additional medical information from his doctors before finalizing his termination,

11

but he pointed to no evidence that Dr. Nasr (or any other doctor) would have told CCG that Graham's symptoms had improved to the point that it was safe for him to return to full duty performing his essential job functions. Instead, Dr. Nasr's deposition testimony—which is presumably what Dr. Nasr would have said if CCG had asked—establishes that Graham did not experience a miraculous recovery on June 28, 2023. Rather, the testimony shows that Graham still suffered from the same progressively worsening heart disease that had prevented him from performing the essential functions of his job for many months.

Accordingly, the Court finds that the generic return-to-work note is not sufficient evidence to create a genuine issue of material fact that Graham could, at the time of his termination, perform the essential functions of his job. The letter is also not sufficient to show that Graham was not a direct threat to himself or others in the community. For these reasons, the Court finds that a reasonable jury could not conclude based on the present record that Graham was a qualified individual, and the Court thus grants CCG's motion for summary judgment on Graham's ADA discrimination claim.

## II. Graham's ADA Retaliation Claim

Graham also contends that CCG unlawfully retaliated against him by separating him from his employment after taking extended medical leave from 2022-2023. The ADA prohibits retaliation

against an individual for opposing any unlawful act or practice in violation of the ADA. 42 U.S.C. § 12203. To establish a prima facie case of retaliation under the ADA, an employee must demonstrate that "(1) [he] engaged in a statutorily protected expression, (2) [he] suffered an adverse employment action, and (3) there was a causal link between the two." *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016). The first element of this claim—engaging in a statutorily protected expression—"may be met by a request for reasonable accommodation." *Id.*

CCG asserts that Graham did not engage in a statutorily protected expression when he took extended medical leave in 2022-2023. The Eleventh Circuit has found that an employee's request for an indefinite leave of absence was not a reasonable accommodation. *See Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) (holding that an employee's request of "an accommodation of indefinite leaves of absence so that he could work at some uncertain point in the future . . . was not reasonable"). Graham admits that he was out of work on indefinite leave for approximately fourteen months in 2022 and 2023. Because an indefinite leave of absence is not considered a reasonable accommodation, Graham has failed to establish that he engaged in a statutorily protected expression under the ADA. Accordingly, CCG's summary judgment motion (ECF No. 11) is granted as to Graham's ADA retaliation claim.

CONCLUSION

For the foregoing reasons, CCG's Motion for Summary Judgment (ECF No. 11) is granted.

IT IS SO ORDERED, this 22nd day of December, 2025.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA